# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-166-JLK

GRAVINA SIDING & WINDOWS, CO., a Colorado Corporation,

      Plaintiff,

v.

GRAVINA'S WINDOW SERVICE d/b/a GRAVINA'S WINDOWS OF DENVER, a Colorado corporation; and JEFFREY GRAVINA, an individual

      Defendants.

---

## MOTION FOR LEAVE TO INTERVENE

---

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, James Gravina; Gail Gravina, Gravina's Window Center, Inc., Christine Gravina, Michael Gravina, Jennifer Ramirez *née* Gravina, Lisa Bickerstaff *née* Gravina, Jonathan Gravina , Gravina's Window Installation, LLC, and Jake Gravina (hereinafter "Third-Party Plaintiffs") hereby moves the Court as follows: (1) for leave to intervene in this action; and (2) to accept the accompanying Third Party Complaint.  Third-Party Plaintiffs seek leave to intervene in this action in order to protect the interests of each named member of the James Gravina family and their businesses

## I.    <u>BACKGROUND</u>

The factual background is set out and supported more fully in the accompanying Third Party Complaint.  Plaintiff Gravina's Siding and Windows, Co. has attempted to summarize the matter as follows in signed pleadings at the Trademark Trial and Appeal Board:

> Registrant's CEO Larry Gravina has been in the windows, siding, and door business, since his father first opened Alsco Aluminum Building Products, Inc. on April 6, 1976.  It was not until Larry Gravina opened "Gravina's Siding & Windows" in 1988 that his "Gravina" surname was used as a trademark in connection with its window, doors and siding

1

business.  To protect its common law rights, Registrant applied to register its GRAVINA'S mark on June 16, 2016.

 On January 24, 2017, the United States Patent and Trademark Office ("USPTO") issued to Gravina Siding & Windows Registration No. 5,128,543 for GRAVINA'S for the goods… without requiring Registrant to claim that its mark had acquired distinctiveness. Petitioner ("Gravina's Window Center, Inc.") is owned by Jim Gravina, who is Larry Gravina's brother.  Jim Gravina also opened a retail center for windows and related products but did not use the "Gravina" surname as a trademark in connection with his business until well after Registrant used the GRAVINA'S mark.  In fact, Petitioner did not incorporate until 1992, which the Secretary of State of Colorado's business records corroborates.

Plaintiff's counsel's representation is inaccuracy by omission.  The fact pattern regarding Gravina's is far broader and goes back for well past three quarters of a century.  In summary, the Gravina's family patronymic has been used, and continues to be used by an almost countless number of family members of the Gravina patriarch, Anthony Gravina, who worked and owned businesses providing window and siding installation in the Denver Metropolitan area.  Each of the Third-Party Plaintiffs as well as the Plaintiff and its owner, Larry Gravina (who counsel lists as CEO of Gravina's Siding and Windows, Co.) held themselves as window and siding professionals utilizing the surname Gravina. Many of the Anthony Gravina decedents have started businesses using the Gravina's cognomen.  The same holds true with the extended relatives (e.g. Gary Gravina's Windows of Denver, a business still operating, but for reasons unknown, Plaintiff did not make a part of this proceeding).

In short, as the Third Party Complaint details and Plaintiff's counsel even subtly acknowledged (see Attachment B), Larry Gravina's business, Gravina Siding and Windows, Co., was not the first in use nor the only user of the Gravina's cognomen for window services in the Denver Metropolitan area.  In fact, as exhibits attached to the Third Party Complaint demonstrate, there have been a plethora of windows and siding business operating both before Gravina's Siding and Windows Co. claimed both the first in use, in existence contemporaneously with their claimed

2

exclusive use date, after the claimed record date and now.  In fact, even if Plaintiff is successful in enjoining Defendants from using the Gravina's surname in its windows and siding business, there still would be a significant number of other entities holding out window and siding services using the Gravina's surname, for which Plaintiff has no ownership or control.

There is no doubt of a family feud between the progeny of Anthony Gravina.  (The circumstances are detailed in the Third Party Complaint at paragraphs 27 through 35).  Both before and after that time, as circumstances have it, most of Anthony Gravina's heirs now compete in the windows and siding services business in the Denver Metropolitan area using their patronymic. Larry Gravina scrumptiously registered a trademark and is now using that filing as leverage to unfairly compete against any other Gravina, including his brother and apparent nemeses, James Gravina and his immediate family.  Such unfair competition is both escalating, continuing and affecting the business interest of every one of the Third-Party Plaintiffs to the point they either need to intervene or file an independent action.  For the reasons stated below (and previously communicated to opposing counsel), intervention is far more appropriate than an independent cause of action.

## II.    <u>HISTORY OF THE CASE & CONFERRAL WITH COUNSEL FOR PARTIES</u>

On or about December 6, 2018, the undersigned received the Letter attached as Exhibit A. The undersigned reviewed the underlying trademark filing Plaintiff relied upon, studied the claims, began securing counsel for Defendants, and notified opposing counsel that a) it was not counsel for the Defendants, b) it would be attempting to cancel Plaintiff's trademark in front of the USPTO Trademark Trial and Appeal Board for the reasons stated in the cancellation.

On or about January 18, 2019, Plaintiff filed its Complaint against Defendants. Approximately, February 22, 2019 counsel for Jeffrey Gravina *et.al*. entered his appearance.  On

or about March 19, 2019, Defendants filed a Motion to Stay pending the outcome of the previously filed TTAB proceeding which was denied by the Court. Defendants further filed a Motion for More Definite Statement regarding one cause of action but otherwise answered the Complaint. The Court denied such motion, and the Court ordered Defendants to Answer by May 1, 2019. The pretrial scheduling conference is scheduled for June 6, 2019 but was vacated, and discovery has not yet begun.

Since December 6, 2018, the undersigned and agents thereof launched an extensive detailed investigation of over eighty years of the history of the Gravina name in and outside of the Denver Metropolitan area. Such an investigation included family lineage, first use of the name Gravinas, how numerous parties have used the cognomen Gravina's, history of discord in the Gravina's family etc. The investigation involved the ordering and pulling of historical records, family/witness interviews, Nexus searches, metatag and image searches, trade-show reviews, search engine, iterations and a review and organization of a deluge of other documents. The undersigned worked assiduously understanding that if the time came to involve itself, it should not be at the prejudice of any party but still had to meet the requirements of Fed. R. Civ. P. 11.

There were several instances of communication between Counsel Dulin and the undersigned regarding the likelihood this matter could be resolved; upon information and belief, the same holds true between Counsel Dulin and Thomas Walsh, counsel for Jeffrey Gravina *et.al.*

As specifically related to this Motion, pursuant to D.C.COLO.LCivR 7.1(a) and Section III(A) of the Court's Practice Rules, the undersigned contacted Counsel Dulin indicating additional members of the Gravina party intended to intervene and requesting his position thereof. In such written correspondence, the undersigned articulated the reasons for intervention as follows: "Ultimately, we are moving to intervene as opposed to file our own action is multi-fold: a) it

certainly promotes judicial economy to flesh out discovery and trails the exact same factual pattern (otherwise we will have two, possibly three, matters on the same issues in front of various fact finders), b) your action against Jeffrey Gravina has a significant adverse impact on my clients, c) given the circumstances, the potential for an intervention should come as no surprise to neither you or your client and d) any intervention does not cause prejudice, as it is early in the instant matter and no one's rights are being impacted (at least in comparison to the filing of a separate complaint.)"

Upon Counsel Dulin's written request, the undersigned provided additional, substantive information about the parties, the substantial underlying facts, the claims, reasoning, and clients' positions, why Third-Party Plaintiffs are attempting to intervene in this matter, what Third-Party Plaintiffs will do if the attempt is unsuccessful, the nature of the claims, parties and non-parties, and how the undersigned was attempting to comply with local rules.  On May 15, 2019, Counsel Dulin responded that he opposes the relief requested in this Motion but may change his position once he reviews the Complaint.  In summary, the undersigned suggested deferral on a position re: the Motion to Intervene; Counsel Dulin countered that Plaintiff will currently oppose the Petition for Intervention but may review their position. Defendants Jeffrey Gravina and Gravina's Window Service d/b/a Gravina's Window Service of Denver consent to the intervention of the Intervenors and joins in the Third-Party Complaint. Third-Party Interveners do not take issue of allowing Plaintiff to argue their position in opposition or even (hopefully) changing its position once this pleading and filing is reviewed by Plaintiff and Third-Party Defendant Larry Gravina.

## III.    ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure traditionally has received a liberal construction in favor of applicants for intervention in the 10th Cir. *See Genesis Ins. Co. v. Crowley,*

*2005 U.S. Dist. LEXIS 41888 (D. Colo. 2005); Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("Our court has tended to follow a somewhat liberal line in allowing intervention."); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) ("This circuit follows 'a somewhat liberal line in allowing intervention.'").

As described below and in more detail in the accompanying Third Party Complaint, all Third-Party Plaintiffs have protectable interests that would be significantly impacted by the disposition of the claims in this case. Thus, intervention by all Third-Party Plaintiffs in this litigation as a matter of right under Rule 24(a) is warranted. Alternatively, Third-Party Plaintiffs respectfully submit that intervention is well within the Court's discretion under Rule 24(b), and requests that the Court exercise its discretion to permit intervention.

## A.  INTERVENTION AS A MATTER OF RIGHT IS WARRANTED

The Tenth Circuit has articulated a four-part test to assess whether to allow intervention as a matter of right under Rule 24(a): (1) is the intervention timely; (2) the applicant "claims an interest relating to the property or transaction which is the subject of the action;" (3) "whether the applicant's interest may as a practical matter" be "impair[ed] or impede[d];" and (4) "whether the applicant's interest is not adequately represented by existing parties." *Elliott Indus. Ltd. P'ship v. B.P. Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005); *Utahns for Better Transp.*, 295 F.3d at 1115; *see also* Fed. R. Civ. P. 24(a)(2).  Each of the Third-Party Plaintiffs satisfies the prerequisites of Fed. R. Civ. P. 24(a)(2)

### 1.  Potential Third-Party Application to Intervene is Timely

Because this litigation is in its relative infancy, Third-Party Plaintiffs' request to intervene is manifestly timely, and no party can claim cognizable prejudice from permitting Third-Party Plaintiffs to intervene at the outset of this case. *See Utah Ass'n, of Counties v. Clinton*, 255 F.3d 1248,1250 (10th Cir. 2001) (finding that the district court abused its discretion in finding

intervention untimely in light of "the relatively early stage of the litigation and the lack of prejudice to plaintiffs flowing from the length of time between the initiation of the proceedings and the motion to intervene"); *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) ("The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'"). *See also Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission, 834 F.3d 562, 565–66* (5th Cir. 2016) ("intervenor of right filed a timely motion to intervene when it "sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded....").

2.  Third-Party Plaintiffs Have A Protectable Interest Relating to the Subject Matter of this Litigation

The protectable interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Utahns for Better Transp. v. U.S. Department of Transportation,* 295 F.3d 1111, 1115 (10th Cir. 2002). That court indicated:

> We have had frequent occasion to analyze what sort of interest is required by Rule 24(a)(2). (The interest) must be "direct, substantial, and legally protectable…The sufficiency of an applicant's interest is a highly fact-specific determination. (and must) be concerned persons as is compatible with efficiency and due process…The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest. *Id.*

In this matter, each Third Party Platinff is in the zone of interests as they have a significant protectable interest in this action.  Again, Petitioners describe a detailed fact scenario with the basis being a dubious trademark and leveraging such in an attempt to enjoin and seek monetary damages from each individual named Plaintiff's brother or son.

Each individual Third-Party Plaintiff is in analogous stead utilizing their given surname in distinguished enterprises in the siding and windows industry in the Denver Metropolitan area. Each Third Party Plaintiff has its own economic interest in the overall success of their Gravina named company(s) for which they are employed and/or own. Based on the action by Plaintiff, there is reason to believe that Plaintiff and Larry Gravina may now or in the future take action against any Third Party Plaintiff on Plaintiff's whim. Finally, each individual Third Party Plaintiff has been impacted by the Lanham Act 43(a) actions alleged in the attached Third Party Complaint. Furthermore, each individual's interests cannot be represented by Defendant Jeffrey Gravina and his entity because the Defendants are not that person or entity. The corporate entities are each owned by a member of the James Gravina family, but not the member of the family who Plaintiff has sued in the instant matter. In short, the intervention of each Third-Party Plaintiff is therefore not only necessary but compatible with efficiency and due process in order to adjudicate this case timely and with the interests of all parties in front of this Court.

3.  Third-Party Plaintiff's Interests will be Significantly Impaired or Impeded by the Disposition of this Case

If the Court disposes of the instant matter without permitting Third-Party Plaintiffs to intervene, each Third-Party Plaintiff's ability to protect his, her or their own interests will be substantially impaired. Such impairment of interests is another compelling reason justifying intervention, particularly given the minimal showing required to satisfy this prong of the intervention standard. *See Utahns for Better Transp.*, 295 F.3d at 1115.

In *Utahns for Better Transp.*, the Tenth Circuit held that intervention is appropriate when an action may impair or impede another party's ability to protect its interests. *See Id.* (citing *Natural Res. Def. Council v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978) ("There is some value in having the parties before the court so that they will be bound by

8

the result.")). Indeed, "the question of impairment is not separate from the question of existence of an interest." *Natural Res. Def. Council*, 578 F.2d at 1345. "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest *is possible* if intervention is denied. This burden is minimal." *Utah Ass'n*, 255 F.3d at 1254 (citations omitted).

Here, the Gravina's surname has been used in the window and siding business since the 1950's.  In 2017, Plaintiff obtained a federal trademark for the surname claiming windows and siding goods and Plaintiff and Larry Gravina are now using that problematic registration to dictate the use of each individual's personal cognomen, in other words using the existence of a trademark registration hold each Third-Party Plaintiff hostage.  Additionally, as the Third Party Complaint fleshes out, Plaintiff and Larry Gravina are using false claims of association with individual petitioners by juxtaposing its ads  with individual Third-Party Plaintiff's names using GoogleAds. This matter is already impacting and will continue to impact all Third-Party Plaintiffs. Furthermore, the results of the instant litigation will certainly impact any of Gravinas currently using their name and likeness, along with the rights associated therewith personally and in their chosen field.

The legal questions at issue in this case directly relate to the interests of every party and include

a) Whether the Plaintiff registered a valid USPTO trademark under the entirety of the facts and if not, should the mark be cancelled?
b) Has Plaintiff and its CEO, Larry Gravina, been committing acts of unfair trade practices under the Gravinas name and then taking those findings into consideration, and finally c)under the totality of circumstances?
c) Can Plaintiff or Larry Gravina seek monetary and/or injunctive relief against any member of the (deceased) Anthony Gravina progeny including each Third-Party Plaintiff including their related businesses?

Furthermore, any adjudication of this case will most likely have a preclusive effect and will, at a minimum, have a strong precedential effect on each individual and Gravina's company name and the rightful interests in using his or her name.

### 4. Third-Party Plaintiff's Interests are Not Adequately Represented

Each Third-Party Plaintiff's interests are certainly not adequately represented in this case. The Tenth Circuit has explicitly held that the burden of showing a party's interests are not adequately protected is minimal. *Utahns*, 295 F.3d at 1117 indicating "[t]he possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy this minimal burden." *Utah Ass'n,* 255 F.3d at 1254.

The situation in the instant matter is analogous to allegations of a hijacking with multiple victims.  The Third Party Complaint displays each Third-Party Plaintiff's individual patronymic and/or the entity it uses it for (we allege wrongfully) is being hijacked by Plaintiff and potential Third-Party Defendant Larry Gravina.  Each third-party has analogous issues as their cognomens have been affected with the same fact pattern, *but* each individual and entity all have individual perspectives and interests.  Jeffrey Gravina and Gravina's Window Service, Inc. cannot adequately represent the interest of all of the Third-Party Plaintiffs because the Defendants' interests are limited to himself and his business. In fact, the disposition of this case has implications that will touch parties and individuals far beyond those currently named in this action.

Because all four elements of the intervention as of right analysis support intervention by Third-Party Plaintiffs, the Court should permit Third-Party Plaintiffs to intervene as a matter of right pursuant to Rule 24(a).

B.  ALTERNATIVELY, PERMISSIVE INTERVENTION SHOULD BE
ALLOWED

In the event the Court does not permit intervention as a matter of right, Third-Party
Plaintiffs submit that permissive intervention pursuant to Rule 24(b) is justified. Rule 24(b)(1)(A)
provides for permissive intervention when a party's claim or defense and the main action have a
question of law or fact in common. *Lower Ark. Valley Water Conservancy Dist. v. United States*,
252 F.R.D. 687, 691 (D. Colo. 2008) (citing Fed. R. Civ. P. 24(b)). The decision whether or not to
grant a motion for permissive intervention is within the district court's sound discretion. *See, e.g.*,
*City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996); *Kaimachi
R.R. Co. v. Nat'l Mediation Bd.*, 986 F.2d 1341, 1345 (10th Cir. 1993). In deciding on a motion for
permissive intervention, a court will consider whether the movant's input is likely to make a
significant and useful contribution to the development of the underlying factual and legal issues
or, alternatively, is likely to be counterproductive. *Lower Ark. Valley Water Conservancy Dist.* at
691.

Virtually all questions of law and fact in this case will be common to all parties, including
the Third-Party Plaintiffs.  Plaintiff's claims affect the rights of both Defendants and each of the
Third-Party Plaintiffs. The factual family and family business history which mostly omitted by
Plaintiff in their pleadings are the same.  The Lanham Act 43(a) claims are the same.  The reasons
for cancellation of Plaintiff's federal trademark registration are same and the effects this litigation
will have on their ability to use patronymic are also the same.  Each Third-Party's rights to the use
of their name and likeness is directly on point as to any defense Plaintiff and/or Larry Gravina may
have to the claims in this case. Ultimately, to the extent that there exists any legitimate dispute
regarding these rights, it will be addressed in turn in this litigation.  Accordingly, there can be no
question that Third-Party Plaintiffs' participation will make a significant and useful contribution

to the development of the underlying factual and legal issues in the case. For those reasons, Third-Party Plaintiffs respectfully request the Court exercise its discretion to permit Third-Party Defendants intervene in the action.

## IV.    <u>CONCLUSION</u>

As the Third Party Complaint details, this is a fact intensive matter in which Third-Party Plaintiffs and Defendants share common interests. As a matter of right or, alternately, as a matter of discretion, each Third-Party Plaintiff should be involved in any decision concerning rights to their patronymic and the companies they affiliate their persona (including their surname) to. For the reasons set forth above, Third-Party Plaintiffs respectfully urge the Court to grant the present motion allowing Third-Party Plaintiffs to intervene in this action and accept Third-Party Plaintiffs contemporaneously filed Opposition to Motion

Dated May 20, 2019    Respectfully submitted,

s/ Steven H. Weigler
Steven H. Weigler
EmergeCounsel, LLC
1800 Wazee Street, 3rd Floor
Denver, CO 80202
(T) 720-924-8199
(F) 720-893-5909
(E) sweigler@emergecounsel.com

*Counsel for Third-Party Plaintiff/Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on this May 21 2019 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Michael P. Dulin
Polsinelli, P.C.
1401 Lawrence Street, Suite 2300
Denver, Co 80202

Phone: 303-572-9300
E-mail: mdulin@polsinelli.com

*Counsel for Plaintiff*

Thomas P. Walsh, III
Walsh IP Law
7350 E Progress Place, Ste 100
Greenwood Village, CO 80111

Phone: 720-204-5672
Email: tom@walshiplaw.com

*Counsel for Defendants*